[Cite as *Collette v. Baxter*, 2012-Ohio-1333.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| PATRICIA COLLETTE (fka Baxter) | | C.A. No.     25821 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RONALD E. BAXTER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.     1996-04-0969 |

DECISION AND JOURNAL ENTRY

Dated: March 28, 2012

---

BELFANCE, Judge.

{¶1}    Appellant, Ronald Baxter, appeals an order of the Summit County Court of Common Pleas, Domestic Relations Division, that found him in contempt.  This Court affirms, in part, and reverses, in part.

I.

{¶2}    Mr. Baxter and Patricia Collette, f.k.a. Baxter, divorced in 1996.  They have one child who, as a result of a traumatic brain injury suffered at the age of eleven, continues to receive child support past the age of majority.  In 2008, the trial court increased Mr. Baxter's child support obligation from $2,851 to $3,955 per month retroactive to April 6, 2006, the date when Ms. Collette filed her motion to modify.  In so doing, the trial court wrote that "[a]rrearages arising for the period April 6, 2006 to the date of this Judgment shall be determined and twenty percent (20%) shall be added to the monthly child support order until the arrearage is satisfied."  The trial court also found him in contempt for failure to pay medical reimbursements

that he owed to Ms. Collette and ordered him to pay a portion of Ms. Collette's attorney's fees and litigation expenses incurred in prosecuting the motions.

{¶3} Mr. Baxter appealed the 2008 entry, arguing that the trial court calculated the parties' income and their son's expenses incorrectly; erred by finding Mr. Baxter in contempt; and erred by refusing to order monitoring of how Ms. Collette used child support money. *Collette v. Baxter*, 9th Dist. No. 24519, 2009-Ohio-5151, ¶ 1. Mr. Baxter did not challenge any arrearage as a result of the retroactive modification, nor did he challenge the trial court's decision to award attorney's fees and litigation expenses to Ms. Collette. This Court affirmed.

{¶4} On August 24, 2009, Ms. Collette moved the trial court to hold Mr. Baxter in contempt of the November 2008 order "insofar as [he] has failed and refused to pay his ordered child support obligation and half of Plaintiff's attorney's and litigation expenses." In her motion, she noted that Mr. Baxter had not "paid the ordered amount of child support" and that he was "substantially in arrears." The trial court found Mr. Baxter in contempt of the November 2008 order and sentenced him to thirty days in jail, but provided him the opportunity to purge the contempt by making monthly payments toward the child support arrearage, the attorney's fee award, and the litigation expenses. Mr. Baxter appealed.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY HOLDING MR. BAXTER IN CONTEMPT FOR FAILURE TO PAY HIS CHILD SUPPORT ARREARAGE.

{¶5} In his first assignment of error, Mr. Baxter argues that the trial court erred by holding him in contempt for failure to pay child support based on the arrearage referenced in the November 2008 order. Specifically, Mr. Baxter has argued that because the trial court ordered

that the amount of the arrearage "shall be determined," he could not be held in contempt for failing to pay an undetermined amount.

{¶6} Mr. Baxter's argument fails because he misconstrues the trial court's judgment of contempt. Nowhere in that order did the trial court mention that it was holding him in contempt for failure to satisfy the arrearage created by retroactive application of the November 2008 order that increased his level of child support. To the contrary, the order on appeal in this case focused on the fact that Mr. Baxter's arrearage had increased by over $12,000 since November 2008. In other words, the trial court concluded that Mr. Baxter had failed to pay his current level of child support and held him in contempt on that basis.

{¶7} In that respect, this court notes that the CSEA records that were introduced as exhibits at the hearing on this matter are instructive. Those records indicate that despite the language in the November 2008 order to the effect that the then-existing arrearage[1] should be paid by increasing the monthly support order by 20%, CSEA did not add that amount, and Mr. Baxter's monthly support remained that ordered by the Court: $3,995 per month. The same records also demonstrate that irrespective of the arrearage that existed because the support was increased retroactively, Mr. Baxter only made two full payments toward his *current* support obligation between November 2008 and February 2010. The trial court did not err by finding

---

[1] Mr. Baxter accumulated a substantial arrearage between 2001 and 2007 while the parties litigated an earlier motion to modify child support. He satisfied that arrearage with a lump sum payment on April 1, 2007. The arrearage to which the trial court referred in its November 2008 order, later calculated to be $36,183.01, was created by virtue of the retroactive increase in Mr. Baxter's child support obligation. Nonetheless, as explained herein, CSEA records demonstrate that because Mr. Baxter almost never made a full support payment after the 2008 order, his arrearage has increased by about $12,000. This increase is due solely to his failure to make the ordered payments.

him in contempt on that basis. Because the basis for the contempt is the current arrearage rather than the preexisting arrearage mentioned in the November 2008 order, Mr. Baxter's alternative argument that the preexisting arrearage was reduced to judgment, but could not form the basis for contempt, also has no merit. Accordingly, Mr. Baxter's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY HOLDING MR. BAXTER IN CONTEMPT FOR FAILING TO PAY THE AWARD OF ATTORNEY'S FEES AND THE AWARD OF LITIGATION EXPENSES.

{¶8}    In his second assignment of error, Mr. Baxter has argued that the trial court did not have the authority to hold him in contempt for failing to pay the litigation expenses and attorney's fees ordered in November 2008 because, according to him, the trial court had reduced them to judgment and, in the alternative, because the trial court did not require him to pay within a defined frame of time. He has also argued that the trial court erred by holding him in contempt for failure to pay Ms. Collette's litigation expenses, which he characterizes as court costs.

{¶9}    With respect to attorney's fees and litigation costs, the November 2008 entry provided:

> Mother's Motion for Attorney Fees is in the amount of $83,950. The Court finds it to be equitable for Father to pay one half (50%) or the sum of $41,975.

> Mother has also submitted, pursuant to R.C. 3105.73, for payment by Father, Cohen & Company's bill for testimonial and expert witness services of Andrew Finger and others in the amount of $24,910. The Court finds that this bill was reasonable and necessary, and compounded by the litigation and discovery conduct of Father. Therefore, Father shall pay one half (50%) of said sum of $24,910 or $12,455, to Mother, as for her expert witness expenses.

> * * *

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Father shall pay to Mother the sum of $41,975 for her attorney fees and $12,455 for litigation expenses and judgment is rendered and process may issue.

Mr. Baxter has argued that because the trial court entered judgment in favor of Ms. Collette with respect to the litigation costs and attorney's fees, the trial court could not then enforce the order through contempt. Although Mr. Baxter has not made the basis of his argument explicit, the cases upon which he relies stand for the proposition that once a judgment is entered, it is a "debt" under Section 15, Article 1 of the Ohio Constitution, which provides that "[n]o person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud." Thus, it appears that Mr. Baxter's position is that the trial court's contempt order violated Section 15, Article I of the Ohio Constitution. We do not agree.

{¶10} Spousal support, child support, and "provisions in a separation agreement relating to the division of property" are not debts for purposes of Section 15, Article 1 of the Ohio Constitution. *See Cramer v. Petrie*, 70 Ohio St.3d 131, 135-136 (1994). In *Harris v. Harris*, 58 Ohio St.2d 303 (1979), for example, the Ohio Supreme Court considered whether property settlements that are incorporated into an order of the court are subject to enforcement by contempt. The Court noted that, as with spousal support, the requirements of a property division are not are in the nature of ordinary money judgments or business debt. *Id.* at 310. Although such an order "'partak[es] also of the nature of a judgment[]'" it "'goes further, and is a direct command of the court to the defendant to pay the sums therein mentioned. This command it has been the practice of courts from time immemorial to enforce by proceedings for contempt[.]'" *Id.* at 310-311, quoting *Holloway v. Holloway*, 130 Ohio St. 214, 217 (1935). The Court later applied the same reasoning to child support obligations:

> We do not view an obligation to pay child support as such a debt. An obligation to pay child support arises by operation of law and is a personal duty owed to the former spouse, the child, and society in general. It does not arise out of any business transaction or contractual agreement, as does an ordinary debt. Thus, we have consistently held that support obligations are not debts in the ordinary sense of that word.

*Cramer* at 135.

**{¶11}** Mr. Baxter draws our attention to *Sizemore v. Sizemore*, 12th Dist. No. CA2009-04-045, 2010-Ohio-1525, in which the Twelfth District Court of Appeals limited the application of *Cramer* to contempt proceedings "'after emancipation of the child, for failure to make support payments on that portion of the obligation not reduced to judgment[]'" and held that "it remains unconstitutional to imprison for failure to pay a lump sum obligation." (Emphasis omitted.) *Sizemore* at ¶ 10, quoting *Robinson v. Robinson*, 11th Dist. No. 94-L-088, 1996 WL 502141, * 3 (Aug. 6, 1996). We disagree with the Twelfth District Court of Appeals' analysis and assessment of the holding in *Cramer* as "unclear." To the contrary, the Supreme Court's analysis in *Cramer* and its predecessors is grounded on the nature of the financial obligation between husband and wife in a domestic case and on the trial court's authority to order payment directly. *See generally Harris* at 310-311. *See also Ferritto v. Krihwan*, 11th Dist. No. 2009-L-0114, 2011-Ohio-4017, ¶ 20-28.

**{¶12}** We see no reason why a different result is required in this case. In 2008, the trial court ordered Mr. Baxter to pay a portion of Ms. Collette's attorney's fees and litigation expenses that she incurred in the process of litigating motions to increase Mr. Baxter's child support obligation and for contempt for nonpayment of his existing obligation. The trial court noted that its decision was based, in part, on Mr. Baxter's objectionable conduct during the course of the post-decree litigation. The amount awarded by the trial court is a personal obligation owed by Mr. Baxter and derived from the trial court's authority under R.C. 3105.73(B), which authorizes an award of attorney's fees and litigation expenses in connection with post-decree motions. The fact that the trial court phrased its 2008 order in language akin to a judgment did not exclude the court's prerogative to enforce its order by contempt proceedings.

**{¶13}** Mr. Baxter's second argument is that the trial court could not hold him in contempt for failure to pay the attorney's fees and litigation expenses because the November 2008 order did not require him to do so within a defined period of time.

**{¶14}** "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. When contempt seeks to remedy disobedience of a court order by benefitting the complainant, the contempt is civil in nature. *See Harvey v. Harvey*, 9th Dist. Nos. 09CA0052, 09CA0054, 2010-Ohio-4170, ¶ 5. "'Remedial civil contempts serve to compensate plaintiffs for damages suffered because of the defendant's disobedience of a court order.' The plaintiff must prove her loss as she would in any legal action for damages." (Internal citations omitted.) *Id*. In this respect, when the contemnor has failed to abide by the terms of a court order that does include a deadline for compliance, a reasonable time may be implied. *See Willis v. Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716, ¶ 60-63 (12th Dist.). *See also McFarland v. McFarland*, 5th Dist. No 01CA00021, 2001 WL 1468920, *3 (Oct. 21, 2001). *Dombroski v. Dombroski*, 7th Dist. No. 506, 1999 WL 783975, *7 (Sept. 28, 1999).

**{¶15}** Although the trial court did not set a deadline for payment of Ms. Collette's attorney's fees and litigation expenses in the November 2008 order, the trial court did not err by holding Mr. Baxter in contempt. In effect, the trial court implied a reasonable time for compliance into the November 2008 order which, in light of Mr. Baxter's acknowledgement that after more than two years he had not paid anything toward those expenses, was not error.

{¶16} Mr. Baxter's final argument is that the trial court erred holding him in contempt for failure to pay "court costs." This argument is not well-taken because, although the November 2008 order did allocate the court costs to Mr. Baxter, the trial court did not address costs in the contempt order and, specifically, did not find him in contempt for failure to pay costs.

{¶17} The trial court did not err by finding Mr. Baxter in contempt for failure to pay the portion of Ms. Collette's attorney's fees and litigation expenses required by the November 2008 order. His second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING $15,000 OF ATTORNEY'S FEES WITHOUT HOLDING A HEARING OR GIVING NOTICE TO MR. BAXTER THAT SUCH AN AWARD WOULD BE CONSIDERED.

{¶18} In his third assignment of error, Mr. Baxter has argued that the trial court erred by ruling on Ms. Collette's motion for attorney's fees without giving him an opportunity to oppose the motion.

{¶19} R.C. 3109.05(C) provides:

If any person required to pay child support * * * is found in contempt of court for failure to make support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall * * * require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt * * *.

Under Loc.R. 25.02 of the Summit County Court of Common Pleas, Domestic Relations Division, "[a] motion for attorney's fees may be combined with requests for other relief." Loc.R. 25.02 contemplates a hearing at which "either party shall present evidence or stipulations sufficient for the court to make a decision[,]" but the reasonableness of fees may be established

by an affidavit of fees and expenses rather than by expert testimony. *See* Loc.R. 25.02; Loc.R. 25.04(B).

{¶20} As an initial matter, we note that Mr. Baxter was not without notice that the trial court would hear the issue of attorney's fees in connection with the contempt motion. As permitted by Loc.R. 25.02, Ms. Collette combined her request for attorney's fees with her motion to show cause. When she moved to bifurcate the hearing on the motion to show cause from the hearing on pending motions to modify child support, she requested that the motion to show cause and request for attorney's fees be heard together. Ms. Collette's trial brief, which was filed before the contempt hearing, addressed the issue of fees. Although Mr. Baxter's own trial brief disputed that the request for fees would be heard, his attorney acknowledged during his opening statement that Ms. Collette's attorney included it in his trial brief:

> [W]e're here on two motions. * * * The Court granted [the motion to bifurcate] and specifically stated that today was contempt and there's no reference to attorney fees. We are not prepared nor ready to argue attorney fees.

> Looking at the Plaintiff's trial brief in this matter she apparently has gone very broadly on attorney fees. Looking for attorneys fees on all motions including substantial issues concerning discovery and/or lack of compliance. The - - so we would object to anything going forward on attorney fees.

Mr. Baxter later objected to introduction of the affidavit of fees, and the following exchange occurred:

> COUNSEL: [We object to] [t]he attorney fee affidavit not only for the reasons stated beforehand that this matter was not set for attorney fees. We had asked in our discovery request also for copies of all exhibits to be used in this hearing in this matter, we did not get this in advance.

> THE COURT: Well, I'm going to accept the affidavit. However, if you want a hearing on that, we'll have a hearing.

> COUNSEL: I would like so, your Honor, based just on the hearing brief [plaintiff's counsel] filed. There are charges in here for things that are totally unrelated to the contempt * * *.

THE COURT: I don't know whether there are or not, but you'll be able to argue anything you want.

At this point, the record reflects that Ms. Collette's attorney offered to be cross-examined on the affidavit then, but there is no response from Mr. Baxter's attorney or the trial court recorded. Instead, the trial court moved on to another matter, then issued a written decision several months later without conducting a hearing on attorney's fees.

{¶21} Although the record indicates that Mr. Baxter should have been on notice that the matter of attorney's fees would be considered at the hearing in the first place, the trial court in effect granted a continuance with respect to that issue, saying that Mr. Baxter's attorney would have the opportunity to make his arguments in a later hearing. Having done so, it was error for the trial court to summarily award fees based solely on Ms. Collette's fee affidavit. Mr. Baxter's third assignment of error is sustained.

### III.

{¶22} Mr. Baxter's first and second assignments of error are overruled. His third assignment of error is sustained. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and this matter is remanded to the trial court for a hearing on attorney's fees as provided herein.

Judgment affirmed in part
reversed in part
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

---

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
CONCURS

DICKINSON, J.
CONCURRING.

{¶23} I agree with the majority opinion, but write separately to clarify a couple of issues. Regarding whether a child support order that has been reduced to judgment can be enforced in a contempt action, the Ohio Supreme Court held in *Cramer v. Petrie*, 70 Ohio St. 3d 131 (1994), that "[a]n obligation to pay child support is not a 'debt'" [under] Article I Section 15 of the Ohio Constitution. *Id*. at syllabus. The Supreme Court also held that trial courts may enforce child support obligations through a contempt proceeding. *Id*. at 136; R.C.

2705.03.1(B)(1) ("Any party who has a legal claim to any support ordered for a child . . . may initiate a contempt action for failure to pay the support.").

{¶24} Mr. Baxter has argued that *Cramer* is distinguishable because the child support order in that case had not been reduced to a judgment. In *Young v. Young*, 2d Dist. No. 93 CA 10, 1994 WL 147793 (Apr. 20, 1994), the trial court granted Bobbie Young's motion to have Joseph Young's child support arrearage reduced to a lump sum judgment. Mrs. Young later moved the court to hold Mr. Young in contempt for not paying the judgment. The trial court granted her motion and found Mr. Young in contempt. On appeal, the Second District reversed, reasoning that, because the child support order had been reduced to a lump sum judgment, it had been converted to a "civil judgment representing money owed to one parent by another, i.e. a debt, which is squarely within the contemplation of the constitutional prohibition against imprisonment for debt in a civil action." *Id*. at *2. It concluded that the trial court, therefore, "lacked authority to find Mr. Young in contempt for his failure to pay the lump sum judgment on support arrearages." *Id*. at *3. The Ohio Supreme Court reversed the Second District's decision, however, and reinstated the trial court's decision on the authority of *Cramer*. *Young v. Young*, 70 Ohio St. 3d 679, 680 (1994). Accordingly, regardless of its form, a parent's obligation to pay child support is not a debt under Article I Section 15 of the Ohio Constitution and a parent may initiate a contempt action under Section 2705.03.1 to enforce the judgment or order.

{¶25} Regarding whether a trial court may hold a parent in contempt for failing to pay attorney fees and litigation expenses awarded in a divorce proceeding, the answer depends on whether the fees and expenses are considered a form of spousal support. Under Section 3105.73(A), "[i]n an action for divorce, . . . a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." Section

3105.73(D) provides that "[n]othing in this section prevents an award of attorney's fees and litigation expenses from being designated as spousal support . . . ." As with child support obligations, spousal support obligations are not "debts" under the Ohio Constitution and "may be enforced by proceedings in contempt . . . ." *Holloway v. Holloway*, 130 Ohio St. 214, 217 (1935) (citing *State ex rel. Cook v. Cook*, 66 Ohio St. 566 (1902)).

{¶26} It is not necessary to determine whether Mr. Baxter's obligation to pay Ms. Collette's attorney's fees and litigation expenses was a form of spousal support in this case, however, because the trial court did not make a finding of contempt for failure to pay the fees and expenses separate from its finding of contempt for Mr. Baxter's failure to pay the increase in child support. After discussing Mr. Baxter's failure to pay the increase in child support and his failure to pay the previously ordered attorney's fees and litigation expenses, the court found "that [Mr. Baxter] is in willful Contempt of Orders of the Court contained in the Judgment Entry of November 17, 2008[,]" and sentenced him to 30 days in jail. The court had authority to sentence Mr. Baxter to 30 days in jail simply for his failure to pay the increase in child support, so any error by the trial court in also considering his failure to pay the fees and expenses was harmless. R.C. 2705.05(A)(1) (allowing a term of imprisonment of no more than 30 days in jail for a first offense).

{¶27} It is true that two of the purge conditions that the trial court imposed were for Mr. Baxter to make monthly payments toward the attorney fee and litigation expense awards. A trial court, however, has discretion when setting the requirements to purge a contempt conviction, and Mr. Baxter has not argued that the conditions imposed by the trial court in this case were unreasonable or impossible to perform. *Baird v. Byrd*, 2d Dist. No. 19808, 2003-Ohio-6252, at ¶24. *See Mackowiak v. Mackowiak*, 12th Dist. No. CA2010-04-009, 2011-Ohio-3013, at ¶51;

*Burchett v. Miller*, 123 Ohio App. 3d 550, 552 (6th Dist. 1997). I, therefore, agree with the disposition of the majority opinion.

APPEARANCES:

JOHN M. DOHNER, Attorney at Law, for Appellant.

SCOTT ROSENTHAL, Attorney at Law, for Appellee.